Clara Driscoll v. Commissioner.
Driscoll v. Commissioner
Docket No. 112198.
United States Tax Court
1944 Tax Ct. Memo LEXIS 388; 3 T.C.M. (CCH) 73; T.C.M. (RIA) 44021; January 27, 1944
*388 J. P. Jackson, Esq., for the petitioner. Stanley B. Anderson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax of $28,608.66 and $27,041.17 for the years 1939 and 1940, respectively. Seven errors were assigned by petitioner. One of those, the disallowance of a deduction of $35,389.04 for the year 1939, is confessed by respondent. Another, upon the disallowance by respondent of deductions in that year of $2,500 and $2,000, representing attorney's fees and an amount paid in compromise of litigation, is withdrawn by petitioner. Effect will be given thereto in computing the deficiencies under Rule 50. The remaining five issues are: (1) The inclusion in income by respondent in 1939 and 1940 of the sums of $1,914.13 and $3,837.96, received in those respective years from the Federal government as the cost of certain water tanks constructed on petitioner's ranch properties under a range conservation program of the Department of Agriculture. (2) The disallowance of a deduction representing attorney's fees of $1,065 paid by petitioner in 1939. (3) The failure to allow as a deductible loss for 1940 *389 the sum of $61,160.70 expended as a result of an alteration in construction of a hotel and office building by petitioner. (4) The disallowance of a deduction taken by petitioner in 1939 of $1,182.34, representing interest upon an income tax liability of the estate of her brother incurred prior to the distribution of such estate to her as sole legatee. (5) The increasing of petitioner's income for 1939 and 1940 by amounts representing the aliquot part of depletion taken by petitioner in prior years on bonus payments on oil leases where the leases were terminated as to portions of the leased premises during the two years in question and before there was production from the portions released. Certain facts were stipulated and others established by evidence on the hearing. For convenience, the facts with respect to each issue and the opinion thereon will be hereinafter set out separately. Certain general facts pertaining to all issues will be set out under the first issue. Issue 1 Findings of Fact Petitioner is a resident of Corpus Christi, Texas. She is a woman of large means, owning and operating numerous cattle ranches, and is the owner of a bank in Corpus Christi, of which *390 she is the president. She is the owner of a large hotel in that city and possesses other varied property interests. In 1939 and 1940 petitioner made written application for participation in a range conservation program of the Department of Agriculture for the construction of certain water tanks on range lands belonging to her. These applications were approved and the tanks constructed and the full cost thereof borne by the Federal government, petitioner receiving payment therefrom of $1,914.13 in 1939 and $3,837.96 in 1940. In determining the deficiencies respondent has, in each of these years, included the amounts so received. Opinion On this issue petitioner is concluded by our decision in ; affd., . We there held that payments such as these are includable in gross income. Respondent's action is accordingly approved. Issue 2 Findings of Fact In 1939 the Texas Federation of Women's Clubs was in financial difficulties by reason of a threatened foreclosure of mortgages on its clubhouse in Austin, Texas. A representative *391 of the federation approached petitioner with a view to securing a loan in refinancing these mortgages. Petitioner agreed to make the loan and employed an attorney to pass upon the title to the property in Austin, prepare the necessary mortgage, and to attend to the other details in connection with the advancing of the money and the protection of petitioner's interests. This attorney examined the title to the property and made a report to petitioner approving it. With funds she furnished, petitioner took over the two mortgages outstanding on the property, and made provision for the payment of delinquent taxes and the payment of an unsecured indebtedness of the federation. The total amount advanced for these purposes by petitioner was $92,000 and a deed of trust was prepared and executed securing the payment of a note in this amount executed by the federation. Petitioner, in 1939, paid the bill of this attorney in the sum of $1,065 for his services and expenses in the matter. The aforesaid deed of trust was executed on March 20, 1939 and on March 29, 1939, on the occasion of the meeting in Corpus Christi of the Texas Federation of Women's Clubs, petitioner made a gift to that organization *392 of the loan of $92,000. In making the loan petitioner had no idea or plan of a gift to the federation. The loan was made with the expectation that it would be repaid, with interest at three per cent, as called for by the deed of trust. The federation, in securing the loan and executing the deed of trust, fully expected that it would be required to make payment and action had been taken for special annual assessments on all of the member organizations of the federation to provide the funds necessary to meet interest and annual curtail on the loan. This transaction was a bona fide loan entered into by petitioner for profit. Opinion Respondent has disallowed the amount paid by petitioner to her attorney for his services in representing her in connection with the loan of $92,000 to the Texas Federation of Women's Clubs on the ground that it was a personal expense borne in connection with a gift and not a business transaction. He has assumed that at the time of making the loan petitioner had already determined to give this money to the federation. Our findings of fact, that petitioner had no such intention at the time of making the loan and that the transaction was entered into for *393 profit, dispose of respondent's contention. Respondent is in error in his disallowance of this deduction. Issue 3 Findings of Fact In October 1939, petitioner entered into a contract with the McKenzie Construction Company for the construction of a hotel and office building in Corpus Christi, Texas. Work thereon was begun in the following month. In September 1940, petitioner decided to make certain radical changes in the building. It had been determined that the air conditioning system, as designed, was ineffective. The work of construction had progressed to such an extent that a large portion of this system had already been installed and certain of the facilities for operation, such as fans and motors, had been delivered by the manufacturer. It was also decided to make changes in construction for enlargement of the building and to eliminate certain features specified in the original plans. On certain of these features considerable work had been done in the installation of material, and in some instances specially fabricated material had been delivered and was awaiting installation. As a result of these changes the insulated metal cold air ducts, already installed, were removed. *394 This could only be and was done by a destruction of the material. In addition to the air cooling system the changes necessitated the removal of other materials already installed with a consequent labor cost. In some instances the material so removed could only be disposed of for scrap. In others material specially fabricated and not yet delivered by the manufacturer was retained by him and an allowance was made on the bill for such material. Some materials were returned to the manufacturer and a cancellation charge made by the latter. The total cost to petitioner of these changes in construction was approximately $5000,000. With respect to the air conditioning and plumbing changes the cost of the material torn out, less salvage recovered or allowance made on return to the manufacturer, plus the original labor cost of installation and the labor cost for tearing out, amounted to $34,300. The cost, similarly computed upon material and fixtures torn out other than plumbing and air conditioning, amounted to $14,747. Since the two items of cost above set out represented expenditures in construction by petitioner, they were both subject to percentage payments by petitioner under her contracts *395 with the general contractor and the architect. Fees paid the contractor and architect on these items amounted to $12,113.70. The total of the payments by petitioner on account of the items in question was $61,160.70. Petitioner, in her return for 1940, deducted the sum of $32,284.02 as a loss occasioned by the changes made during construction, as above detailed. In determining the deficiency this deduction was disallowed by respondent. Error was assigned upon this disallowance. Petitioner, however, by amendment to her petition, now claims her loss was in the sum of $61,160.70. She asks its allowance and a finding of overpayment of her tax in consequence. Opinion Petitioner contends that in view of the fact that the materials here involved were actually torn out of the structure and do not now exist as a part thereof, their cost, together with the expense of their installation and removal, and the cost of the services of the contractor and architect in respect thereto, constitute a loss then realized and deductible. It is urged that the situation is similar to that in which machinery or equipment is purchased for use and afterwards discarded prior to the recovery of its cost in depreciation. *396 Such remaining cost, less the scrap value of the asset, it is said represents a loss then deductible. It is also argued that the case is parallel to that in which a building is acquired for use and with no idea of its demolition for purposes of reconstruction and after such acquisition it is decided to demolish the building for the erection of a new structure. There the amount of the original cost of the demolished building represents a deductible loss. ,; , (appeal to C.C.A., 7th Cir., dismsd., ); ; ; . It is pointed out that the materials and equipment purchased and, in many cases, already installed, were so bought and installed with the full intention that they be so used. It is then said that a subsequent change of that intention resulting in their removal necessarily *397 characterizes the expenditures in respect to their cost and removal to be a loss then sustained in that ascertainable amount. We can not agree. Costs of changes in design, whether because of mistake or otherwise, before construction are manifestly merely a part of the costs of the structure as finally completed. The same may be said of changes in design conceived during the construction period and which necessitate removal of equipment or material already installed. The acceptance of petitioner's theory would result in a deductible loss in practically every construction project. Common experience tells us that no construction job is carried out with such perfection that some material, because of error, mistake, or even slight change in design, is not removed and therefore does not remain as a part of the completed structure. Such expenditures are, we think, clearly a cost of construction. Petitioner's case differs from the ordinary instance of this character only in the fact that the changes were here considerable and the expenditures involved ran into a substantial amount of money. Losses are realized only from a closed transaction. The transaction in this case was the construction *398 of the hotel and office building. The expenditures in question were merely incidents of that transaction. The changes voluntarily made by petitioner, with the anticipated result that they would require the removal of materials and facilities already installed, were to bring about the construction of the building according to a new plan. It was evidently concluded that this new plan, even at the consequent increased cost, would result in the construction of a building of an added value justifying such additional expense. Under such conditions, we think no closed transaction occurred with respect to any items of the additional cost imposed by reasons of the change. Cf. ; affd., . The cases cited by petitioner are not in point. In those cases the demolition of the buildings did not result from a change in the plan of a building in the course of construction. Here the destruction of property was merely an incident of the cost of the building as ultimately completed under the new plan. That fact is demonstrated when we consider that one of the *399 items here claimed by petitioner is that portion of the architect's and contractor's fees in connection with the construction of the completed building which is allocable to the item of cost represented by the other items which, she contends, constitute realized loss. We hold that petitioner is not entitled to the contested deduction of expenditures for material and facilities destroyed or scrapped as an incident to the carrying out of a change in the plan of construction. Issue 4 Findings of Fact The petitioner was the sole legatee under the will of her brother, Robert Driscoll, who died July 7, 1929, a resident of the State of Texas. The administration of the estate was closed November 2, 1938 and the entire estate was then distributed to petitioner. On February 2, 1939, petitioner paid the sum of $1,182.34, constituting interest upon a deficiency in income taxes determined against the estate of her deceased brother for the calendar year 1935. Her deduction of this payment on her tax return for 1939 was disallowed by respondent. The propriety of that disallowance is the issue here. Opinion The tax deficiency upon which the disputed interest accrued was not a liability *400 of petitioner until the distribution to her of the estate of her brother and the interest accruing prior to such distribution was not interest upon her indebtedness but that of another and is consequently not deductible by her. ; . Of the total amount paid by petitioner, however, that portion of the interest which accrued for the period subsequent to her receipt of the estate of her brother is interest upon her indebtedness and is deductible. ;The amount of such interest may be computed under Rule 50. Issue 5 Findings of Fact We include by reference the formal stipulation of facts filed by the parties on this issue Briefly, these are that petitioner in prior years executed certain oil leases of lands belonging to her providing for the payment of a bonus of $5 per acre on the area included. Upon the bonus on each lease paid to and received by petitioner, deductions for depletion of 27 1/2 per cent were taken by her in reporting such bonuses as income *401 in the years received. In the years 1939 and 1940 certain of the acreage covered by the aforementioned leases was surrendered to petitioner by the lessee and at the time of such releases, in each instance, there had been no production from the area included therein. In determining the deficiencies respondent has, in each year, included in petitioner's income an amount constituting the proportionate part of the total depletion allowance taken by petitioner in the past which the total acreage relinquished in that year bore to the total acreage originally leased. This was done on the ground that these amounts represented previously allowed depletion on bonuses received for leases which terminated in the taxable years without having become productive. Petitioner, on October 12, 1936, as a member of a partnership, executed an oil lease to 114.68 acreas of a property known as the McGregor tract to Pan-American Oil Company. For this lease a cash bonus of $22,936 was received. The petitioner's portion of this partnership income was reported by her in 1936 and 1938. Deductions of statutory depletion of 27 1/2 per cent, amounting to $3,153.70, were taken by her from that bonus. On April *402 12, 1940 this lease to Pan-American Oil Company was abandoned and terminated by nonpayment of rental. At that time there had been no production from the leased property. In determining the deficiencies for 1940 respondent restored to income this depletion in the sum of $3,153.70. Opinion As to the last item representing depletion taken by petitioner on the Pan-American Oil Company lease, terminated in 1940 as to the entire tract, respondent's action must necessarily be approved on authority of ; affd., ; rehearing den., ; cert. den., ; ; ; affd., , (remanded on another point, ). As to the leases which were terminated upon a portion of the leased premises, we held in ; pet. for rev. dismsd., - Fed. (2d) -, (May 1, 1943), that *403 where the lease was terminated as to a portion of the lands prior to production of oil there should be restored to income in the year of such termination that part of the depletion previously taken which was allocable to the acreage so released. On authority of that decision the action of respondent is approved. Decision will be entered under Rule 50.